UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Detroit Davis-Riley,<br><br>　　　　　Defendant. | No. 23-cr-0233 (MJD/DLM) (1)<br><br><br>**REPORT AND RECOMMENDATION** |

　　　　On July 12, 2023, Detroit Davis-Riley was charged by indictment with a single count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. 1.) This matter is before the Court on Mr. Davis-Riley's Motion to Suppress Evidence. (Doc. 16.) This motion has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

　　　　The Court held an evidentiary hearing on Mr. Davis-Riley's Motion to Suppress on September 15, 2023. (Doc. 34.) Mary Riverso, Esq., appeared on behalf of the United States of America ("the government"). Glenn Bruder, Esq., appeared on behalf of Mr. Davis-Riley, who was present at the motion hearing. The briefing on this matter concluded on October 24, 2023. For the reasons stated below, the Court recommends that Mr. Davis-Riley's Motion to Suppress Evidence be denied.

## BACKGROUND

At the motion hearing, the Court heard testimony from City of New Hope Police Officer Benjamin Rouse. The government offered and the Court received Government Exhibit 1, Officer Rouse's Squad Video footage; Government Exhibit 2, Officer Rouse's Body-Worn Camera ("BWC") footage; Government Exhibit 3, an evidence photo of narcotics; Government Exhibit 4, an evidence photo of a loaded magazine and loose ammunition; Government Exhibit 5, an evidence photo of a loaded firearm; and Government Exhibit 6, the New Hope Police Department Inventory Search of Impounded Vehicles Policy. Mr. Davis-Riley did not offer any exhibits.

The evidence presented at the motion hearing established the following. On February 13, 2023, Officer Rouse was on routine patrol. (Tr. at 10.) His squad car was a Ford Explorer with a New Hope Police Department logo on the passenger's side door and large spotlight above the driver's side-view mirror. (*Id.*) Shortly after 1:30 p.m., Office Rouse was driving west near the 7200 block of Bass Lake Road when he saw a maroon Chevrolet Suburban driving the opposite direction near the 7400 block of Bass Lake Road. (*Id.* at 12.) Officer Rouse was following behind a large pickup truck when he saw the maroon Suburban crest the top of a hill about two blocks away. (*Id.*) He testified that he saw the Suburban change "lanes from the inside lane to the outside lane closest to the curb . . . without signaling the lane change." (*Id.* at 17–18; Gov't Ex. 1 at 0:48–55.[1]) Officer

---

[1] All references to time reflect the timestamp found in the bottom left corner of the video exhibit.

Rouse knew nothing about the vehicle or the people inside it when he observed the lane change, but he intended to stop the vehicle for the traffic violation. (Tr. at 12.)

Officer Rouse activated his squad video as well as his BWC and began narrating his observations. (*Id*. at 12, 13, and 18; Gov't Ex. 1 at 1:03–17; Gov't Ex. 2 at 0:02–45.) As the Suburban passed him, he slowed down, turned around, and followed the Suburban. (Tr. at 18–19, 50.) Officer Rouse testified that he observed the passenger "rock his seat back, almost in an attempt to conceal himself, and I observed [Mr. Davis-Riley] stiffen up on the steering wheel[.]" (*Id*. at 19.) Officer Rouse also testified that he "could not tell definitively, but it appeared that [Mr. Davis-Riley] might not have been wearing a seatbelt," because Officer Rouse could not see a seatbelt strap "coming across the left-hand shoulder, typically where a seatbelt would be displayed." (*Id*. at 19, 23; Gov't Ex. 2 at 0:13–17.) According to the officer, "through [his] training and experience [he] recognize[d] this to be an indication that there may be something more criminal going on in the vehicle," beyond the alleged "violation [he] observed." (Tr. at 20.) Officer Rouse followed the Suburban for about 40 seconds to one minute and testified that he observed it "swerving within its own lane, turning on its blinker, and not turning, passing a driveway, and then eventually rolling through a red light turning southbound." (*Id*. at 19, 20; Gov't Ex. 1 at 1:00–2:00.)

Officer Rouse initiated a stop of the Suburban on West Broadway just south of Bass Lake Road. (Tr. at 20–21.) He testified that as he approached the vehicle on the passenger side, he noticed the odor of marijuana coming from the vehicle. (*Id*. at 22.) When he reached the passenger side window, he saw "a gold scale with marijuana residue on it and

Swisher cigar wrappers on the center console." (*Id.* at 23.) Officer Rouse testified that "[b]ased on the odor of the marijuana, the scale, the residue, and the wrappers" he believed "there may be narcotics usage or narcotics sales going on within the vehicle." (*Id.*) There were two men in the vehicle—the driver and the passenger—whom Officer Rouse did not know or recognize. (*Id.* at 24.) The driver identified himself as Detroit Davis-Riley and provided his driver's license and insurance information. (*Id.* at 23–24.) Officer Rouse saw that Mr. Davis-Riley's insurance had expired in December 2022. (*Id.* at 24.)

Officer Rouse returned to his squad car to run routine checks and request a second officer's assistance with the stop. (*Id.* at 24–26.) The officer's routine checks consisted of verifying the registered owner of the Suburban, checking that the driver's license was valid, and checking the Minnesota Court Information System ("MNCIS") for the driver's criminal history. (*Id.* at 25–26.) As a result of these routine checks, Officer Rouse learned that Mr. Davis-Riley was not the Suburban's registered owner, but that he did have a valid driver's license. (*Id.* at 25.) Officer Rouse also learned that Mr. Davis-Riley "had a conviction from 2015 of second-degree assault, making him a felon." (*Id.* at 26.) Officer Rouse testified that he requested assistance from another officer because he was "getting ready to conduct a probable cause search of the vehicle" based on the "odor of raw marijuana and the marijuana residue [he saw] in plain view on top of [the gold] scale" and because a second officer helps to address safety concerns in a way that is "less restrictive than putting both occupants in [the backseat of my vehicle]." (*Id.*)

While waiting for the second officer to arrive, Officer Rouse asked Mr. Davis-Riley to get out of the Suburban and stand by the passenger window of his squad car. (*Id.* at 26–

4

27.) Officer Rouse asked to pat-down Mr. Davis-Riley for weapons and Mr. Davis-Riley consented; Officer Rouse found nothing on Mr. Davis-Riley's person. (*Id*. at 27.) Officer Rouse asked Mr. Davis-Riley who was the Suburban's registered owner and Mr. Davis-Riley told him that he had just bought the Suburban from his father's mechanic shop, and he did not know the registered owner. (*Id*. at 28; Gov't Ex. 2 at 6:32–49.) Next, Officer Rouse asked Mr. Davis-Riley if there was any marijuana in the Suburban. (Tr. at 28; Gov't Ex. 2 at 9:16–34.) Mr. Davis-Riley stated that the passenger did have a small bag of marijuana on him in the vehicle. (Tr. at 28; Gov't Ex. 2 at 9:28–32.) Officer Rouse told Mr. Davis-Riley that he "wasn't concerned" about "a little bit of marijuana," but that he was "more interested in finding pounds of marijuana[.]" (Tr. at 28; Gov't Ex. 2 at 9:32–39.) Office Rouse then asked if there were any guns in the Suburban and Mr. Davis-Riley "shook his head and said 'nah'." (Tr. at 29.) Mr. Davis-Riley then told Officer Rouse that he and the passenger had just smoked some marijuana, but that there wasn't any left in the Suburban. (*Id*. at 30; Gov't Ex. 2 at 10:16–19.)

About 10 minutes into the stop, a second police officer arrived on the scene. (Tr. at 30–31; Gov't Ex. 2 at 11:02–07.) At that point, Officer Rouse asked the passenger to get out of the vehicle and patted him down for weapons but did not find any. (Tr. at 30; Gov't Ex. 2 at 11:16–42.) Then Officer Rouse began searching the Suburban, starting with the front passenger area, moving to the center console, then to the back seat. (Gov't Ex. 2 at 11:47–15:13.) While searching the Suburban, Officer Rouse observed a number of things he found suspicious: there was a flathead screwdriver on the passenger floorboard; the scale, which had once been on top of the center console, was now tucked in the pocket on

5

the rear of the passenger's seat; a backpack with a "large amount of marijuana"[2] was pushed under the second-row passenger's seat; and there was a plastic bag "filled with Swisher cigars" in the vehicle, as well as a box of "Ziploc-style baggies." (Tr. at 31–32; Gov't Ex. 2 at 11:47–50, 13:47–15:13.)

Officer Rouse then told Mr. Davis-Riley and his passenger that they were both under arrest. (Tr. at 34; Gov't Ex. 2 at 15:22–26.) Mr. Davis-Riley complied, but the passenger took off running and Officer Rouse chased after him. (Tr. at 34–35; Gov't Ex. 2 at 15:26–18:26.) While Officer Rouse chased the passenger, other officers searched Mr. Davis-Riley incident to arrest and found a bag of marijuana in the right pocket of his jacket. (Tr. at 35.) The other officers also continued to search the Suburban and found a magazine loaded with ammunition, and a sock with ammunition in it in the driver's side door pocket. (*Id.* at 37; Gov't Ex. 4.) Then, officers removed the center counsel's cup holders and found a 9mm Glock handgun underneath the compartment. (*Id.* 40–41; Gov't Ex. 5.)

## ANALYSIS

Mr. Davis-Riley raises two issues in his motion. First, he contends that Officer Rouse did not have probable cause to stop the Suburban he was driving because Officer Rouse did not observe any traffic violations. Second, he argues that even if Officer Rouse had probable cause for the stop, the officer did not have probable cause to prolong Mr. Davis-Riley's detention to search the vehicle without a warrant. He insists that all evidence discovered because of the stop and warrantless search should be suppressed. The

---

[2] Officer Rouse testified that there was "a little over 187 grams" of marijuana in the backpack. (Tr. at 32; Gov't Ex. 3.)

government contends that Officer Rouse lawfully stopped Mr. Davis-Riley's vehicle based on an observed traffic violation and then reasonably prolonged the stop because he had probable cause to search the vehicle without a warrant based on the smell of marijuana coming from the Suburban. The Court considers these issues in turn.

**I.      Officer Rouse had probable cause to stop Mr. Davis-Riley's Suburban based on traffic violations the officer observed.**

Mr. Davis-Riley first argues that Officer Rouse did not have probable cause to stop his vehicle because Officer Rouse did not observe any unlawful conduct. The government contends that Officer Rouse observed Mr. Davis-Riley's Suburban fail to signal a lane change, in violation of Minn. Stat. § 169.19, subd. 4, which established probable cause for the stop.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. A traffic stop is a seizure under the Fourth Amendment. *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (citing *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009)). In general, law enforcement must have probable cause to believe a traffic violation has occurred to reasonably stop a vehicle. *United States v. Galtney*, No. 19-cv-0332 (MJD/BRT), 2022 WL 16701377, at * 2, (D. Minn. Aug. 29, 2022) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)), *R. & R. adopted*, 2022 WL 1654946 (D. Minn. Oct. 31, 2022). Even a minor traffic infraction may provide probable cause to justify a stop. *Galtney*, 2022 WL 16701377, at * 2 (citing *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)).

Officer Rouse testified that while he was on patrol driving westbound on Bass Lake Road, he observed a maroon Suburban, driving toward him, fail to signal a lane change in violation of Minn. Stat. § 169.19, subd. 4. (Tr. at 12.) According to Officer Rouse's testimony, the Suburban had just crested a hill when it switched from the inside lane, closest to oncoming traffic, to the outside lane, closet to the curb, without signaling. (*Id.* at 17; Gov't Ex. 1 at 0:48–55.) Mr. Davis-Riley contends that the squad video does not clearly show that he did not signal during his lane change. Even if this were true, however, the squad video shows other traffic violations which Officer Rouse observed, and that provided probable cause to stop the Suburban. Immediately after observing what he believed to be a traffic violation, Officer Rouse activated his squad and body-worn cameras, began narrating his observations, then slowed down, turned around, and followed the Suburban for about one minute before finally stopping the vehicle. (Tr. at 12–13, 18–20, 50; Gov't Ex. 1 at 0:48–2:00; Gov't Ex. 2 at 0:00–1:01.) While following the Suburban, Officer Rouse believed he observed Mr. Davis-Riley fail to come to a complete stop at a red light in violation of Minn. Stat. § 169.06, subd. 5(a)(3)(i)(A). (Tr. at 19, 20; Gov't Ex. 2 at 0:15–17.) So while nothing in the record contradicts Officer Rouse's testimony that he saw the Suburban change lanes without a signal, even if he were mistaken, the officer's added observation of an additional traffic violation provided him with a basis to lawfully stop the vehicle.

**II.     Officer Rouse had probable cause to search Mr. Davis-Riley's Suburban based on the smell of marijuana coming from the vehicle.**

Mr. Davis-Riley next argues that even if Officer Rouse had probable cause to stop his Suburban, the government did not have probable cause to search the vehicle. The government responds that Officer Rouse had probable cause to search the vehicle because he smelled marijuana coming from the Suburban.

The Eighth Circuit has made clear that the smell of marijuana coming from a vehicle is enough to establish probable cause to search the vehicle for drugs. *Galtney*, 2022 WL 16701377, at *6 (collecting cases). But Mr. Davis-Riley contends that Officer Rouse should have overlooked the smell of marijuana coming from the Suburban given the passing of Minnesota state legislation legalizing marijuana possession in August 2023. But this search took place in February 2023, several months before marijuana possession became lawful in the state of Minnesota.

In the Eighth Circuit, when police smell marijuana in a vehicle during a traffic stop, they have probable cause to search the vehicle. *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (finding that smell of marijuana, along with officer's credible testimony, is enough to establish probable cause to search a vehicle and its contents). Here, Officer Rouse not only testified that he smelled marijuana as soon as he reached the passenger side rear bumper and then saw a scale covered with marijuana residue sitting on the Suburban's center console, but Mr. Davis-Riley also admitted that his passenger had marijuana with him in the vehicle. (Tr. at 22, 23, 28; Gov't Ex. 2 at 9:28–33, 10:15–17.) Therefore, law enforcement officers had probable cause to search the entire vehicle without a warrant.

*Galtney*, 2022 WL 16701377, at *6 (citing *United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021) ("And based on the smell of marijuana emanating from the car and the marijuana cigarette found in the passenger's jacket, the officers also had probable cause to search the entire vehicle for drugs and drug paraphernalia.")).

Although Mr. Davis-Riley does not appear to challenge the scope of the police officers' search of the Suburban, to be clear, the "scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted . . . it is defined by the object of the search and the places in which there is probable cause to believe it may be found." *States v. Ross*, 456 U.S. 798, 24 (1982); *see also United States v. Stringer*, 739 F.3d 391, 395 (8th Cir. 2014) (concluding that probable cause to search permits officers "to search the vehicle and any closed containers" inside it); *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") (quoting *Ross*, 456 U.S. at 825.))

*Galtney* illustrates this point precisely. There, the District Court upheld the search of a vehicle during a traffic stop based on the smell of marijuana and driver's admission of marijuana in the vehicle. 2022 WL 16549469, at *4. After asking the driver and passenger to exit the vehicle, officers searched the entire vehicle including, "opening the cupholder compartment where [officers] found . . . two guns." *Galtney*, 16701377, at *6. The Court found that police had probable cause to search the enclosed area of Defendant's vehicle, "including the cupholder compartment." *Id*.

Just like in *Galtney*, officers here had probable cause to search under the vehicle's cupholder compartment based not only on the smell of marijuana coming from the car, but also Mr. Davis-Riley's admission that his passenger had marijuana inside the vehicle—within arm's reach of the cupholder compartment. (Tr. at 28; Gov't Ex. 2 at 9:28–32.) Moreover, officers found marijuana in Mr. Davis-Riley's jacket pocket in a lawful search incident to arrest and discovered a magazine and loose ammunition during their search of the vehicle. (Tr. at 35, 37; Gov't Ex. 4.) When officers have "probable cause to believe a vehicle contains evidence of criminal activity [officers are authorized] to search . . . any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009) (internal citation omitted). As a result, this Court finds that the police had probable cause to search the enclosed areas of Mr. Davis-Riley's Suburban, including under the cupholder compartment where officers found a firearm.

## RECOMMENDATION

Based on the files, records, and proceedings, and for the reasons stated above, **IT IS RECOMMENDED** that Mr. Davis-Riley's Motion to Suppress Evidence (Doc. 16) be **DENIED**.

DATED: November 14, 2023          s/Douglas L. Micko
                                                     DOUGLAS L. MICKO
                                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).